Application of WILSON.

(Court of Appeals of District of Columbia. Submitted May 15, 1919. Decided June 2, 1919.)

No. 1230, Patent Appeals.

1. PATENTS &#8413;54—ANTICIPATION—ELEVATOR FOR OIL WELL TUBINGS.

Two claims of a patent application involving an elevator device for raising oil well casings or tubings *held* not clearly anticipated by, or a perfectly obvious variation from, two devices patented, in one case three, and in the other seventeen, years previously, where no mechanic had succeeded in perfecting the prior devices, and applicant's device has since practically superseded the prior art.

2. PATENTS &#8413;113(7)—DOUBT RESOLVED IN FAVOR OF PATENTABILITY.

Where the court, after giving weight to the diversity of opinion among Patent Office experts and considering other pertinent facts, is in doubt whether an applicant is entitled to certain patent claims, the doubt will be resolved in applicant's favor.

Appeal from the Commissioner of Patents.

Patent application by Elihu C. Wilson. From a decision by the Commissioner of Patents, rejecting certain claims, the applicant appeals. Affirmed in part, and reversed in part.

H. S. Hill, of Washington, D. C., for appellant.

Theodore A. Hostetler, of Washington, D. C., for Commissioner of Patents.

SMYTH, Chief Justice. This is an appeal from a decision of the Patent Office rejecting claims 4 to 19, inclusive, of appellant's application for a patent on a device relating to an elevator for raising cases or tubings out of oil wells and the like. We have no doubt with respect to the correctness of the decision, except as to claims 4 and 10, which read:

4. Improvements of the character disclosed, comprising two relatively movable clamping and holding members having a hinge connection and capable of being opened or closed at such hinge connection when a pipe is between the same, suspension means connected with one only of the clamping members, and securing means whereby said members are held together in working relation; said member with which said suspension means are connected being

---

&#8413;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

provided with an abutment upon which is seated the swinging end of the other clamping member.

10. In improvements of the character disclosed, two relatively movable clamping and holding members, suspension means connected with only one of said members and at both ends thereof, connection means whereby the members are hinged at an end of each, and securing means whereby the free ends of the members are held together; said securing means comprising a device applied to said members parallel with the vertical axis of the bore between the members.

These claims were rejected on patent 471,896, issued to Richards, and on patent 834,537, to Riggs. The tribunals of the Patent Office do not agree as to the grounds on which they place these rulings. The Examiner says that claim 4 is anticipated by Riggs, although he admits that Riggs' device is probably inoperative. He holds, however, that invention would not be necessary to make it work. Claim 10 is disposed of by him on the footing that it, with other claims, is a perfectly obvious variation over the construction shown by Riggs. On the other hand, the Examiners in Chief find that the Riggs structure is not necessarily inoperative, but do not decide the question. They say that both claims read on Richards', which they admit might have to be changed by cutting a slot in member $B$ and placing a tongue on member $F$. This, they assert, is suggested by the Riggs patent. The change, according to them, would not require invention but could be accomplished by any skilled mechanic.

The first assistant commissioner holds that the Riggs device is "obviously inoperative," and does not suggest a modification of the Richards device. He placed his decision upon the ground that claims 4 and 10, with others, do not fully bring out the difference between the appellant's device and the construction of the references.

[1, 2] The Richards device was patented in 1892, and the Riggs in 1906. In one case about 17, and in the other 3, years elapsed after the patents emerged before Wilson entered the Patent Office, which was in 1909. During this period no skilled mechanic succeeded in making the changes which the Examiner believes, and the Examiners in Chief think, might be necessary to produce the Wilson device. If the changes were taught by the references, is it not somewhat singular that no one had learned how to make them prior to Wilson's time? While this is not conclusive, it is worthy of consideration. Persons needing an elevator, and familiar presumably with the Richards and Riggs structures, have adopted the Wilson device, which has practically driven the other structures from the commercial field. We have compared a model of the Riggs patent and the Richards drawings with Wilson's application, and think that the difference between the latter's device and those of the references is quite clear. Giving full weight to the contrariety of opinion among the experts of the Patent Office, and considering the other pertinent facts mentioned, we are in doubt as to whether or not Wilson is entitled to claims 4 and 10, and, this being so, it is our duty to resolve the doubt in favor of the applicant. In re Lewis D. Rowell, 48 App. D. C. 238; In re Thomson, 26 App. D. C. 419, 426; In re Schraubstadter, 26 App. D. C. 331; In re

Eastwood, 33 App. D. C. 291; In re Harbeck, 39 App. D. C. 555; In re Handschuck, 46 App. D. C. 155.

The Commissioner's decision is affirmed as to all the claims involved in the appeal, excepting 4 and 10, and as to them it is reversed, and those claims are allowed as patentable to Elihu C. Wilson.